UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SORABH K.,[1]<br><br>       Petitioner,<br><br>   v.<br><br>CHRISTOPHER CHESTNUT, Facility Administrator of California City Corrections; et al.,<br><br>       Respondents. | No. 1:25-cv-02028-TLN-JDP<br><br>**ORDER** |

This matter is before the Court on Petitioner Sorabh K.'s ("Petitioner") Motion for a Temporary Restraining Order ("TRO"). (ECF No. 1.) For the reasons set forth below, Petitioner's motion is GRANTED.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is a citizen of India who entered the United States on June 13, 2023. (ECF No.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.  The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

1 at 10; ECF No. 1-3 at 10.)  He was apprehended by Border Patrol that same day and issued a Notice to Appear.  (*Id.*)  After being detained approximately eight days, Petitioner was released on his own recognizance on June 22, 2023.  (ECF No. 1 at 10.)

Following his release, Petitioner settled in Stockton, California, where he lives with his brother and is active in his local community.  (*Id.* at 7.)  Petitioner has no criminal history.  (*Id.* at 10.)  Petitioner filed an asylum application on September 26, 2023, and later received employment authorization under category C08, which remains valid.  (*Id.*)  Petitioner has complied with all ICE supervision requirements including attending scheduled ICE check-ins and completing monthly mobile check-ins and photo uploads through the ICE mobile application.  (*Id.* at 10–11.)

Petitioner's Master Hearing occurred on October 9, 2025.  (*Id.* at 11.)  Petitioner was subsequently instructed to report to ICE on December 4, 2025.  (*Id.*)  When he reported on December 4, 2025, Petitioner was taken into custody at the ICE check-in.  (*Id.*)  Petitioner told ICE he had never missed any required uploads, but ICE did not give him an opportunity to clarify or correct any issue, nor did ICE review any information from him.  (*Id.* at 8, 11.)  Petitioner was detained and transported to California City Corrections Center, where he remains.  (*Id.* at 11.)

On December 29, 2025, Petitioner filed a petition for writ of habeas corpus challenging his detention as violating his procedural and substantive due process rights.  (ECF No. 2.)  The same day, Petitioner filed the instant Ex Parte Motion for a TRO.  (ECF No. 1.)

**II.     STANDARD OF LAW**

For a TRO to issue, courts consider whether Petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where there are "serious questions on the merits

. . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

### III. ANALYSIS[2]

#### A. Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his procedural due process claim.[3] The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

As for the first step, the Court finds Petitioner has demonstrated that he has a protectable

---

[2] The Court finds Petitioner has met the requirements for issuing a temporary restraining order without notice. *See* Fed. R. Civ. P. 65(b). Petitioner has submitted the requisite affidavits and notified Respondents via electronic mail on December 29, 2025 that he would be filing the motion. (ECF No. 1-4.) *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (same).

[3] Because Petitioner is likely to succeed on his procedural due process claim, the Court need not address his substantive due process claim.

3

liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) ("*Pinchi*") (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M.*, 2025 WL 2617255, at *3.

Here, Petitioner gained a liberty interest in his continued freedom when he was released from immigration detention on June 22, 2023. (ECF No. 1 at 10.) Like in *Morrisey*, release from immigration custody created an "implied promise" that Petitioner would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. Petitioner submits that he has complied with all the conditions of his release, including attending all scheduled ICE check-ins and completing required monthly mobile check-ins and photo uploads. (*Id.* at 10–11.) Petitioner has never missed a court hearing, has remained in regular contact with ICE, and has no criminal history. (*Id.* at 10–11.) Petitioner's liberty interest is further strengthened by the fact that he has been released for over two and a half years. As this Court has previously found, as have many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner states that during his arrest, he told ICE that he never missed any required photo

4

1    uploads but was not provided an opportunity to clarify or correct the issue. (ECF No. 1 at 8.)
2    Petitioner maintains that he has complied with all ICE supervision requirements. (*Id.* at 11.) At
3    this juncture, the Court finds credible Petitioner's belief that he was in full compliance with the
4    terms of his supervision, preserving the full force of his liberty interest. *See*, *e.g.*, *Bernal v.*
5    *Albarran*, No. 25-CV-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025) (finding
6    detention of asylum applicant improper under § 1226(a), even if she violated the conditions of her
7    release, because she was not a danger to society or a flight risk). Petitioner is likely to succeed on
8    the merits of his constitutional claim.

9          As to the second step – what procedures or process is due – the Court considers three
10   factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an
11   erroneous deprivation of such interest through the procedures used, and the probable value, if any,
12   of additional or substitute procedural safeguards;" and (3) "the Government's interest, including
13   the function involved and the fiscal and administrative burdens that the additional or substitute
14   procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set
15   forth below, the Court finds Petitioner has established his due process rights were likely violated.

16         First, Petitioner has a substantial private interest in remaining free from detention. As
17   discussed above, Petitioner was released from immigration detention on June 22, 2023, and since
18   then has exercised his freedom, establishing a stable life in Stockton with his brother and
19   becoming involved with his local community. Accordingly, Petitioner has a profound private
20   interest in his return to liberty. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD, 2025
21   WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

22         Second, the risk of erroneous deprivation here is considerable given Petitioner has
23   received virtually no procedural safeguards such as a bond or custody redetermination hearing.
24   "Civil immigration detention, which is nonpunitive in purpose and effect, is justified when a
25   noncitizen presents a risk of flight or danger to the community." *R.D.T.M.*, 2025 WL 2617255, at
26   *4 (internal quotation and citation omitted). Without a bond or custody hearing to determine
27   whether Petitioner's detention is justified, the risk that Petitioner is being erroneously deprived of
28   his liberty is high.

Finally, the Government's interest in detaining Petitioner without a hearing before a neutral decisionmaker is low, particularly as Petitioner has consistently complied with monitoring requirements including attending all scheduled ICE check-ins and completing required monthly mobile check-ins and photo uploads, and does not have a criminal record.  As this Court has previously noted, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum petition than to continue to detain him. *See Pinchi*, 792 F. Supp. 3d at 1036 (similarly noting "the cost to the government of detaining [petitioner] pending any bond hearing would significantly exceed the cost of providing her with a pre-detention hearing.").

On balance, the Government's interest in detaining Petitioner without a hearing is low and does not outweigh Petitioner's substantial liberty interest or the risk of erroneous deprivation of liberty.  Due process requires Petitioner receive a hearing before a neutral decisionmaker that complies with all applicable statutes and regulations if he is to be re-detained.

Having found Petitioner has a protected liberty interest and that due process requires Petitioner receive a hearing before a neutral decisionmaker prior to re-detention, the Court finds Petitioner has shown a likelihood of success on the merits.

### B. Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]" *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Petitioner has been detained for approximately one month, during which time he has been separated from his brother, lost his employment, and is unable to support his wife and children in India. (ECF No. 1 at 11.) While in detention, Petitioner has experienced high blood pressure, anxiety, emotional distress, and disrupted sleep. (*Id.*)  Further, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of

irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."). In addition to harms imposed by his continued immigration detention, Petitioner has shown he is likely to succeed on the merits of his constitutional claim. The Court thus finds Petitioner has demonstrated irreparable harm.

### C.     Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds there is no equitable reason that would tip the balance in the Government's favor, because the Government faces no hardship. The Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Rather, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Additionally, and as noted above, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted). In sum, the last two *Winter* factors also weigh in Petitioner's favor.

Having found Petitioner has satisfied each of the *Winter* factors, the Court GRANTS Petitioner's Motion for a TRO.

### IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for a Temporary Restraining Order is GRANTED (ECF No. 1);
2. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011);
3. Petitioner shall be RELEASED IMMEDIATELY from Respondents' custody;
4. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining

      Petitioner absent compliance with constitutional protections, including seven-days' notice and a hearing before a neutral fact-finder where Respondents show: (a) material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

5. Respondents are ordered to SHOW CAUSE why this Court should not convert this temporary restraining order into a preliminary injunction requiring Respondents to continue to abide by this Court's order. Respondents shall file responsive papers by **Tuesday, January 6, 2026.**

6. The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary.

IT IS SO ORDERED.

Date: December 30, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE